## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

ACTION WHOLESALE LIQUORS,   )
CENTRAL LIQUOR, and          )
JARBOE SALES CO.,             )
                                )
      Plaintiffs,          )
                                )
vs.                          )    Case No. CIV-06-0239-F
                                )
OKLAHOMA ALCOHOLIC      )
BEVERAGE LAWS ENFORCEMENT  )
COMMISSION, et al.,          )
                                )
      Defendants.        )

## ORDER

Defendants' "Motion to Dismiss Complaint for Declaratory Judgment and Request for Injunction for Lack of Case or Controversy Due to Failure to Demonstrate Standing," filed April 17, 2006, is before the court. (Doc. no. 12.) Plaintiffs have responded, and the motion is ready for determination.

### Introduction

This action is brought by plaintiffs, three Oklahoma liquor wholesalers, against the Oklahoma Alcoholic Beverage Laws Enforcement Commission (the ABLE Commission).[1] Plaintiffs seek two remedies: a declaratory judgment and an injunction. Plaintiffs seek a declaration that provisions of the Oklahoma Constitution and the Oklahoma Statutes which grant a preference in favor of in-state wineries violate the Commerce Clause of the United States Constitution. Plaintiffs assert this claim in the wake of Granholm v. Heald, 544 U.S. 460 (2005), a case which, briefly

---

[1]The individual members and the director of ABLE are also named as defendants in their official capacities.

stated, found that Michigan statues prohibiting out-of-state wineries from shipping wine directly to in-state consumers, but permitting in-state wineries to do so if licensed, discriminated against interstate commerce.   Plaintiffs allege that the Oklahoma laws challenged in this action likewise discriminate against interstate commerce in violation of the Commerce Clause.  Plaintiffs also seek an injunction prohibiting defendants from enforcing or relying upon the challenged preference, in their licensing, rule-making, and other official actions administering and enforcing Oklahoma's alcoholic beverage control laws.

Defendants move to dismiss this action on the ground that there is no Article III case or controversy because plaintiffs do not have standing to prosecute their claims.

Standards

The party invoking federal jurisdiction bears the burden of establishing the elements of standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  The elements of standing are not mere pleading requirements, rather, they are an indispensable part of the plaintiffs' case.  *Id*. at 561.  Therefore, each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, with the manner and degree of evidence required at each successive stage of the litigation. *Id*.  At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice for standing purposes because, on a motion to dismiss, the court presumes that general allegations embrace those specific facts that are necessary to support the claim.  *Id*.; United States v. Colorado Supreme Court, 87 F.3d 1161, 1165 (10th Cir. 1996), quoting Lujan.  In order to allege injury in fact so as to avoid dismissal for lack of standing, a plaintiff must allege some concrete injury, whether actual or threatened.  Colorado Supreme Court, 87 F.3d at 1165.

<u>Discussion</u>

Given the federal courts' concern about the properly limited role of the courts in a democratic society, the doctrine of standing is especially significant when federal courts are called upon to review duly enacted state laws, as plaintiffs ask this court to do here.  <u>Schultz v. Thorne</u>, 415 F.3d 1128, 1132-33 (10th Cir. 2005).

The parties agree, and the court concurs, regarding the elements which must be alleged (and eventually proven) in support of standing.

> First, the plaintiff must have suffered an injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

<u>Lujan</u>, 504 U.S. at 560-61.[2]

The allegations which plaintiffs cite to satisfy these standing requirements are found primarily at ¶¶ 30 through 37 of the Complaint.  Plaintiffs allege several economic injuries as a result of the challenged Oklahoma preference for Oklahoma wine.  Plaintiffs allege that they derive revenue by selling alcoholic beverages to retailers, so that every time an Oklahoma winemaker sells direct to the retail level, as allowed by the challenged  provisions, plaintiffs suffer an economic injury because

---

[2]<u>Lujan</u> held that environmental groups did not have standing to challenge a regulation of the Secretary of the Interior which required other agencies to confer with the Secretary under the Endangered Species Act only with respect to federally funded projects in the United States and on the high seas.  Discussing the plaintiffs' lack of standing, Justice Scalia wrote that "[t]he most obvious problem in the...case is redressability."  <u>Lujan</u>, 504 U.S. 555, 569.  He reasoned that there was no redressability because other agencies denied the authority of the Secretary to order consultation and would not be bound by an order and action to which they were not a party.  <u>Id</u>. (Justice Scalia with the Chief Justice and two Justices concurring and two Justices concurring in part and in the judgment.)

they lose the opportunity for a profitable transaction at the wholesale level. Plaintiffs also allege that the challenged provisions put wine from out-of-state wineries, which plaintiffs now sell, at a competitive economic disadvantage as compared to wine produced by in-state wineries. Plaintiffs also allege that they have an economic stake in the specific remedy which the court might order should it agree with plaintiffs that Oklahoma's preference for in-state wine is unconstitutional. The Complaint asks the court to sever the challenged provisions. Plaintiffs allege that if, instead of severing the challenged provisions the court were to extend the in-state wine preference to out-of-state wine to alleviate the discrimination, plaintiffs would then suffer a direct economic injury which would "materially" reduce the revenue of plaintiffs' businesses. Finally, plaintiffs allege that the challenged provisions deprive them of their right to engage in interstate commerce under a statutory and regulatory system which conforms to constitutional requirements.

### A. Injury in Fact

Under the <u>Lujan</u> framework, the first element of standing is that plaintiffs must allege an injury in fact which is an invasion of a legally protected interest. The injury must be concrete and particularized, and it must also be actual or imminent, that is, not merely conjectural or hypothetical. <u>Lujan</u>, 504 U.S. at 561.

### 1. Injury by an Invasion of a Legally Protected Interest

Defendants correctly argue that the alleged injury must be personal to the plaintiffs and not based on the rights of a third party. Defendants are incorrect, however, when they argue that the plaintiffs in this action have not alleged an injury which is personal to them. As stated in <u>Clajon Production Corp. v. Petera</u>, 70 F.3d 1566 (10th Cir. 1995), a case cited in defendants' moving brief, the Commerce Clause provides a cause of action--a legally protected interest--to any person injured by discrimination against or by an unreasonable burden upon interstate commerce, even

if that person's injury is indirect. *Id*. at 1571, n.11. Moreover, the Commerce Clause does not protect only non-residents from state regulations that excessively burden commerce. *Id*. In-state residents may also assert a Commerce Clause challenge; they simply have the same burden to establish standing as out-of-state residents. *Id*., citing Lujan and Oregon Waste Sys. v. Department of Env. Quality, 511 U.S. 93 (1994) (in-state landfill operators entitled to challenge their own state's regulations burdening interstate commerce and their ability to provide commercial services to non-resident customers).

The United States Supreme Court has addressed the standing of liquor wholesalers to challenge discriminatory laws. In Bacchus Imports, Ltd. v. Dias, 468 U.S. 263 (1984), the Supreme Court held that in-state liquor wholesalers had standing to raise a Commerce Clause challenge to a Hawaii tax regime exempting certain alcoholic beverages produced in-state from liquor taxes. Although the wholesalers were not among the class of out-of-state liquor producers allegedly burdened by Hawaii's law, the Court reasoned that the wholesalers suffered economic injury because the tax increased the price of their products as compared to the exempted beverages. The Court stated that "the wholesalers are surely entitled to litigate whether the discriminatory tax has had an adverse competitive impact on their business." *Id*. at 267.

The Supreme Court discussed Bacchus in General Motors Corp. v. Tracy, 519 U.S. 278 (1997). The standing issue in General Motors was whether General Motors, a buyer of natural gas, could raise a Commerce Clause challenge to Ohio's exemption of local distribution companies from sales and use taxes, even though General Motors was not one of the sellers said to suffer discrimination under the challenged tax laws. The Supreme Court stated that "cognizable injury from unconstitutional discrimination against interstate commerce does not stop at members of the class

against whom a State ultimately discriminates, and customers of that class may also be injured....  Consumers who suffer this sort of injury from regulation forbidden under the Commerce Clause satisfy the standing requirements of Article III."  *Id*. at 286.  After discussing <u>Bacchus</u> and citing other decisions,[3] the Supreme Court concluded that General Motors "plainly" had standing.  <u>General Motors</u>, 519 U.S. at 287.

Pursuant to these and other authorities cited in plaintiffs' response brief, the court concludes that the specific types of economic losses and competitive disadvantage which are alleged in the Complaint are sufficient to allege an injury in fact suffered by the plaintiffs themselves to a legally protected interest.

## 2.  Injury Which is Concrete and Particularized

To satisfy the first numbered element of the <u>Lujan</u> test, the alleged injury must be concrete and particularized.  Although defendants challenge plaintiffs' ability to satisfy the first element of standing generally, they do not offer any developed argument as to why the injuries alleged by the plaintiffs in this case are not concrete and particularized injuries.  Indeed, defendants' own brief states that "[t]he gist of Plaintiffs' standing assertion is that Plaintiffs are losing out on business because Oklahoma wineries are allowed to sell directly to retailers and restaurants rather than going through a wholesaler."  (Moving brief, p. 7.)  Such an injury is concrete and particularized.  Moreover, the second aspect of plaintiffs' alleged injury is plaintiffs' complaint that the wines they currently distribute are placed at a competitive

---

[3]<u>General Motors</u> cites <u>Fulton Corp. v. Faulkner</u>, 516 U.S. 325 (1996) (in-state stockholder challenged tax regime imposing higher taxes on stock from issuers with out-of-state operations than on stock from purely in-state issuers), and <u>West Lynn Creamery, Inc. v. Healy</u>, 512 U.S. 186 (1994) (in-state milk dealers challenged tax and subsidy scheme discriminating against out-of-state milk producers).

disadvantage by the in-state wines which they do not distribute and which do not carry a wholesale mark-up.  This injury is also concrete and particularized.

Under the legal authorities already cited in this portion of this Order, the court concludes that plaintiffs' alleged injuries are concrete and particularized.  *See*, *e.g.*, Colorado Supreme Court, 87 F.3d at 1165 (United States had standing based on allegations that Colorado Rules interfered with federal prosecutors in their conduct of criminal proceedings and changed the nature of the federal grand jury in Colorado; these alleged injuries were sufficiently concrete and particularized and actual or imminent to withstand a motion to dismiss).

### 3.  Injury Which is Actual or Imminent

The next prong of the first numbered element of the Lujan standing test requires a finding that the alleged injury is one which is actual or imminent and not merely conjectural or hypothetical.  Defendants argue that plaintiffs' injury is merely hypothetical because the Complaint alleges (at ¶ 32) that if the Oklahoma laws are declared unconstitutional, "it is reasonable to believe that Plaintiffs would become the distributors for some of the Oklahoma wineries."  Defendants argue that the allegation that plaintiffs would become the distributors for only "some" of the Oklahoma wineries necessarily implies that plaintiffs are not the only wholesalers in Oklahoma. From this fact, defendants argue that plaintiffs may or may not become distributors for the Oklahoma wineries if the laws they challenge are declared unconstitutional because it is just as likely that Oklahoma wineries would choose other distributors for their wine.  (Moving brief, pp. 7-8.)

Plaintiffs respond with several arguments.  The first is that Article 28, Section 3 of the Oklahoma Constitution provides that Oklahoma wineries are required to sell wine they produce to every licensed wholesale distributor who desires to purchase the wine.  Thus, plaintiffs argue that if the challenged provisions are declared

unconstitutional, Oklahoma wineries would have no choice but to sell to any wholesaler who wants to purchase the wine.  Plaintiffs further point out that even if plaintiffs did not sell and distribute the in-state wine after the challenged laws were held unconstitutional, the out-of-state wine which plaintiffs already sell and distribute would no longer be at a competitive disadvantage following a favorable result in this action.

With respect to the issue of whether or not plaintiffs' injuries are merely speculative, defendants rely on Poe v. Ullman, 367 U.S. 497 (1961).  Plaintiffs distinguish Poe, arguing that it was critical to the Supreme Court's conclusion  that the plaintiffs lacked standing in that case that there were no allegations Connecticut was enforcing or threatening to enforce the statute in issue.  (The statute forbade importation of certain contraceptive devices.)  Indeed, the Supreme Court observed that the Connecticut law had been enforced only once in the eighty years since its enactment.  Id. at 501-02.  By contrast in this case, the Complaint alleges that the ABLE Commission is enforcing and administering Oklahoma's alcoholic beverages laws "in such a manner as to give effect to the exemption and preferences for in-state wineries."  (Complaint, ¶ 26.)  Nor do defendants claim otherwise.

The court concludes that the injuries which plaintiffs allege to have suffered are actual or imminent and not conjectural or hypothetical.

### B.  Causal Connection Between Injury and Complained of Conduct

Defendants do not contest the adequacy of the allegations to support the existence of the second numbered element for standing.  However, as standing is jurisdictional, the court discusses that element briefly.

The second element requires a causal connection between the injury and the complained of conduct.  As explained in Lujan, this means that "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the

independent action of some third party not before the court." <u>Lujan</u>, 504 U.S. at 560-61.  Plaintiffs allege that their injuries result from the administration and enforcement of the challenged Oklahoma laws by the ABLE Commission, the agency charged with their enforcement, and by the Commission's members and director.  Thus, although not put in issue by defendants, the court concludes that the second element is sufficiently alleged.

C.  Injury Will be Redressed by Favorable Decision

The third numbered element of standing requires allegations indicating that it is likely, as opposed to merely speculative, that the injury complained of will be redressed by a decision in plaintiffs' favor.  <u>Lujan</u>, 504 U.S. at 561.  Defendants argue this element is not met for some of the same reasons that they argue plaintiffs' injuries are merely speculative.  Specifically, defendants argue that the Complaint indicates it is uncertain whether plaintiffs will become distributors for the Oklahoma wineries because there are other distributors.   Again, defendants focus on ¶ 32 of the Complaint, where plaintiffs allege that it is "reasonable to believe," that if the discriminatory preferences in favor of in-state wineries were removed, plaintiffs would become the distributors for some of the Oklahoma wineries.  Defendants argue that the third element of standing requires allegations that it is "likely as opposed to speculative" that the complained of injury will be redressed by a favorable decision. (Moving brief, p. 8.)

Plaintiffs respond by arguing that a declaration in their favor in this action would mean that the Oklahoma wineries would then be required to sell to any wholesaler who wants to purchase their wine.  This is because Article 28, Section 3 of the Oklahoma Constitution provides that "[w]inemakers either within or without this state shall be required to sell wine they produce to every licensed wholesale

distributor who desires to purchase the wine."   This provision is quoted in the Complaint at ¶ 19.

Plaintiffs also argue that, in any event, they are not required to demonstrate with certainty that they would in fact receive their desired benefit as a result of a declaration that the Oklahoma laws are unconstitutional.  They argue that the Lujan criterion which requires it to be "likely" that plaintiffs' injury will be redressed is met even where invalidation of the laws in question does not  guarantee achievement of plaintiffs' goal.  Plaintiffs cite Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252 (1977), a case in which the Supreme Court held that the plaintiff housing development had standing to asserts its rights, foremost among them being its right to operate its business free from arbitrary and irrational zoning actions.  Id. at 263.  Plaintiffs also cite Regents of University of California v. Bakke, 438 U.S. 265 (1978), which found that even if Mr. Bakke had been unable to prove that he would have been admitted to medical school in the absence of the special program for minority students, it would not follow that he lacked standing.  Id. at 280 n.14.  The Court reasoned that Mr. Bakke had demonstrated a sufficient injury for standing purposes because of the University's decision not to let him compete for all 100 places in the class based on his race.  Id.  Plaintiffs also cite Colorado Environmental Coalition v. Wenker, 353 F.3d 1221 (10th Cir. 2004), (which, in turn, cites Bakke), for the proposition that "[s]tanding predicated upon denial of a fair opportunity to compete for a position or contract is well established in the law." Id. at 1235.  Finally, plaintiffs point out that even if the wholesalers who bring this action were to never sell or distribute Oklahoma wines following a decision in their favor, plaintiffs' injuries would still be redressed by this action because the wines which the wholesalers do sell, from out-of-state wineries, would no longer be at a competitive disadvantage.

The court finds that defendants' focus on the allegation that "it is reasonable to believe" as opposed to an allegation that it is "likely" a favorable decision will redress the plaintiffs' injuries, is, in the circumstances of this case, a distinction without a difference.   The particular facts and circumstances alleged in the Complaint with regard to standing are sufficient to show (if proved) that it is both "reasonable to believe," and "likely," that plaintiffs' economic injuries will be redressed by a decision in plaintiffs' favor.   A decision which declares the challenged laws unconstitutional and which enjoins enforcement or reliance upon the in-state preference in licensing, rule-making, and other official actions in the administration of the Oklahoma Alcoholic Beverage Control Act, as prayed for in the Complaint, is likely (if not certain) to redress the plaintiffs' injuries.

The court concludes that the third element of standing, the requirement that it be likely as opposed to merely speculative that the injury will be redressed by a favorable decision, is adequately alleged.

Conclusion

This action does not pose an abstract question of constitutional law.  It poses a precise issue:  the constitutionality of an Oklahoma preference for wine produced in Oklahoma.  In support of plaintiffs' attempt to litigate this question, the Complaint alleges facts which, if proved, show that the plaintiffs have an economic stake in this issue.  Plaintiffs' stake is defined by two specific economic injuries, lost revenues and economic disadvantage.  The Complaint explains how these injuries occur and in doing so, alleges facts to support findings of 1) injury in fact, 2) traceability and 3) redressability. Plaintiffs have alleged "a personal stake in the outcome such as assures that concrete adverseness which sharpens the presentation of issues upon which the

court so largely depends for illumination of difficult constitutional questions." O'Shea v. Littleton, 414 U.S. 488, 494 (1974).[4]

After careful consideration of the parties' submissions, the pleadings, and the relevant authorities, defendants' "Motion to Dismiss Complaint for Declaratory Judgment and Request for Injunction for Lack of Case or Controversy Due to Failure to Demonstrate Standing," is **DENIED**.

Dated this 6th day of June, 2006.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

06-0239p004(pub).wpd

---

[4] It goes without saying, but will nevertheless be said, that the motion which is denied by this order does not require the court to address the merits of plaintiffs' claims. This order resolves nothing other than the question of whether plaintiffs will be permitted to attempt to establish that their claims have merit.