# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

ACTION WHOLESALE LIQUORS,   )
et al.,   )
   )
     Plaintiffs,   )
   )
vs.   )   Case No. CIV-06-0239-F
   )
OKLAHOMA ALCOHOLIC   )
BEVERAGE LAWS ENFORCEMENT   )
COMMISSION, et al.,   )
   )
     Defendants.   )

## ORDER

This action requires the court to determine whether Oklahoma constitutional and statutory provisions governing the distribution of wine in Oklahoma violate the Commerce Clause of the United States Constitution (U.S. Const., Art. I, § 8, cl. 3). Specifically, three Oklahoma liquor wholesalers have sued the Oklahoma Alcoholic Beverage Laws Enforcement Commission and individual members of that Commission,[1] alleging that the 2000 amendment to Article 28, Section 3 of the Oklahoma Constitution, and conforming state statutes, are unconstitutional.[2]

_____

[1]The individual defendants are sued in their official capacities only.

[2]The court has previously held that the complaint sufficiently alleges facts in support of the plaintiffs' standing, so as to allow this action to proceed. (Order, doc. no. 16.) Based on the parties' "Joint Stipulations Regarding Standing" (doc. no. 39), the court now further holds that the plaintiffs do, in fact, have standing to bring this action.

The challenged state laws allow in-state wineries,[3] but not out-of-state wineries, to ship wine directly to retailers and restaurants in Oklahoma. Plaintiffs contend that under the United States Supreme Court's decision in Granholm v. Heald, 544 U.S. 460 (2005), this differential treatment of in-state and out-of-state wineries unconstitutionally discriminates against interstate commerce. Accordingly, plaintiffs seek declaratory and injunctive relief. Now pending and ripe for decision are the parties' cross-motions for summary judgment. "Plaintiff's Motion for Summary Judgment" was filed July 21, 2006 (doc. no. 21), and "Defendants' Cross-Motion for Summary Judgment" was filed August 21, 2006 (doc. no. 23). Both motions have been fully briefed, and oral argument was held on September 18, 2006.

## I. Standards.

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists

---

[3]Because the parties in their briefs, and the United States Supreme Court in Granholm v. Heald, often discuss the issues in terms of in-state and out-of-state wineries, or in-state or out-of-state winemakers, this order does likewise. When this order refers to "in-state wineries" or "Oklahoma wineries," or "in-state winemakers," or "Oklahoma winemakers," or makes similar references, it intends to denote winemakers or wineries which qualify under the statutory definition as "Oklahoma winemakers." Title 37 O.S. Supp. 2005 § 506.42 defines "Oklahoma winemaker" as: "a business premises in Oklahoma licensed pursuant to the Oklahoma Alcoholic Beverage Control Act wherein wine is produced by the licensee who must be a resident of the state. The wine product fermented in said licensed premises shall be of grapes, berries and other fruits and vegetables imported into this state and processed herein or shall be of grapes, berries and other fruits and vegetables grown in Oklahoma." The court recognizes that there may be wineries located in Oklahoma which are not licensed "Oklahoma winemakers" because a winery is not a candidate for an Oklahoma winemakers license if the licensee is not a resident of Oklahoma. The challenged constitutional provision provides direct-sale privileges to Oklahoma winemakers but not necessarily to all wineries that operate in Oklahoma.

when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

## II. Undisputed Matters

The following matters are undisputed:

1. Article 28, Section 3 of the Oklahoma Constitution currently provides that:

> Oklahoma winemakers may sell and ship the wine they produce at wineries in this state directly to retail package stores and restaurants in this state.

Okla. Const. Art. 28, § 3. (Complaint ¶ 9; Answer ¶ 9.)

2. The Oklahoma Statutes are consistent with this constitutional provision. *See*, 37 O.S. 2001 § 518.1; 37 O.S. Supp. 2005 § 521.C., G., H. and V.; and 37 O.S. Supp. 2005 § 537. E.1. and G.1. (Complaint ¶ 10; Answer ¶ 10.)

3. All manufacturers of wine and spirits other than Oklahoma winemakers are required to sell their products to licensed wholesalers[4] who, in turn, sell the wine to retailers and mixed beverage licensees. 37 O.S. Supp. 2005 § 521. (Complaint ¶ 11; Answer ¶ 11.)

---

[4]Wholesalers must be individual Oklahoma residents or partnerships consisting exclusively of Oklahoma residents. 37 O.S. 2001 § 527 (1); Oklahoma Alcoholic Bev. Control Bd. v. Muskrat, 480 P.2d 918 (Okla. 1971).

4.     From statehood to the present, the State of Oklahoma has maintained strict control over the distribution of alcoholic beverages.  At the time the Constitution of the State of Oklahoma was adopted, the people of this state separately adopted the Prohibition Ordinance, which prohibited every kind of commercial and noncommercial trafficking in alcoholic beverages.  State v. Kollar, 186 P. 968, 969 (Okla. Crim. 1920).  Even though the United States Constitution was amended to end Prohibition in 1933, Oklahoma did not repeal the state's prohibition provision until 1959.  In that year, Article 27 was added to the Oklahoma Constitution, establishing the Oklahoma Alcoholic Beverage Control Board and setting forth various restrictions on alcohol distribution.  Oklahoma also enacted the Oklahoma Alcoholic Beverage Control Act, codified in Title 37 of the Oklahoma Statutes, which established what is generally referred to as a "three-tier" system of regulation.  Title 37 has been amended and supplemented over the years by various legislative enactments and regulations, without changing the basic operation of the three-tier system – except, as described below, in recent years, with regard to Oklahoma winemakers.  (Complaint ¶ 14; Answer ¶ 14.)

5.     The three-tier system of Title 37 was originally, and is still, premised on a series of license categories and the basic provision that no person may manufacture, sell, or ship alcoholic beverages in Oklahoma except as authorized by a license issued by the ABLE Commission.  37 O. S. Supp. 2005 §§ 518, 521.  The statutes provide that licensed business entities in the first tier (*i.e.* manufacturers and producers) cannot sell or ship direct to consumers or retailers (*i.e.* the third tier).  Instead, licensed businesses in the first tier are allowed to sell and ship only to licensed business entities in the second tier (*i.e.* wholesalers).  *Id.* at § 521.  Wholesalers, in turn, are not allowed to sell or ship direct to consumers.  Instead, wholesalers are allowed to sell and ship only to licensed businesses in the third tier (*i.e.* retailers).  *Id.*  Finally,

licensed retailers are only allowed to sell to consumers. *Id.* (Complaint ¶ 15; Answer ¶ 15.)

6.    In 1984, Oklahoma repealed Article 27 of the Constitution and replaced it and the former ABC Board with Article 28, which established the Oklahoma Alcoholic Beverage Laws Enforcement Commission.  Section 3 of the new article reinforced the three-tier system.  It provides as follows.

> **[A]ny** manufacturer, or subsidiary of any manufacturer who markets his product solely through a subsidiary or subsidiaries, a distiller, rectifier, bottler, **winemaker**, brewer, or importer of alcoholic beverages, bottled or made in a foreign country, either within or without this state, shall be required to sell such brands or kinds of alcoholic beverages to every licensed wholesale distributor who desires to purchase the same, on the same price basis and without discrimination, and **shall further be required to sell such beverages only to those distributors licensed as wholesale distributors.**

Okla. Const. Art. 28, § 3 (emphasis added).  (Complaint ¶ 16; Answer ¶ 16.)

7.    One of the primary purposes of the three-tier system is to assure that alcoholic beverages in the State are channeled through duly licensed wholesalers, each of whom is readily answerable to the State for providing appropriate inventory control (including maintaining a bonded warehouse), prompt tax remittance, and an easy means of restraining sales to inappropriate or unlicenced persons or entities.  Indeed, wholesalers report information on a monthly basis to the Oklahoma Tax Commission, including:

(1).   Opening inventory of alcoholic beverages other than beer;

(2).   Total receipts and acquisitions during month from every source.  This shall be itemized showing imports and purchases from within and without this state separately; the kind, proof and quantity of each type of alcoholic beverage as shown by the shipper's or seller's invoices thereof; the date of each purchase; the amount purchased; the date received; the person from whom purchased; the manifest, bill of lading or delivery invoice number of each

shipment, which number shall be the number used by the original seller as shown on the basic shipping records which accompany the shipment; and the point of origin and point of destination of each shipment;

(3).   The kind and quantity of all alcoholic beverages sold or withdrawn from inventory for sale, use, or consumption during the calendar month; the date of each sale; and the kind, proof and quantity of alcoholic beverages in each sale; the name, address and Alcoholic Beverage Laws Enforcement Commission license number of each purchaser, and the manifest, bill of lading or delivery invoice number, which number shall be the number as shown on the basic shipping records which accompany the delivery;

(4).   All nontaxable sales and dispositions made during said month, supported by evidence satisfactory to the Oklahoma Tax Commission;

(5).   Closing inventory of alcoholic beverages as of the last day of the calendar month; and

(6).   Such other information pertaining to the wholesaler's beginning inventory of alcoholic beverages, receipts or acquisitions thereof, sales and dispositions thereof, and closing inventory, as the Oklahoma Tax Commission may by form or regulation require.

37 O.S. 2001 § 543. A.  (Complaint ¶ 17; Answer ¶ 17.)

8.     As demonstrated above, the current policy of the State of Oklahoma favors a closely regulated alcohol distribution system.  Title 37 O.S. 2001 §503. A. states as follows:  "The Oklahoma Alcoholic Beverage Control Act shall be deemed an exercise of the police power of the State of Oklahoma for the protection of the welfare, health, peace, temperance and safety of the people of the state, and all the provisions hereof shall be construed for the accomplishment of that purpose." (Complaint ¶ 18; Answer ¶ 18.)

9.     In 2000, Article 28, Section 3, of the Oklahoma Constitution, was amended to its current form, including the provision challenged in this suit.  With

emphasis added by the court to indicate the amendatory language, Section 3 provides, in its entirety, as follows.

> The Legislature shall enact laws providing for the strict regulation, control, licensing, and taxation of the manufacture, sale, distribution, possession, and transportation of alcoholic beverages, consistent with the provisions of this Amendment.  Provided, that any manufacturer, or subsidiary of any manufacturer who markets his product solely through a subsidiary or subsidiaries, a distiller, rectifier, bottler, winemaker, brewer, or importer of alcoholic beverages, bottled or made in a foreign country, either within or without this state, shall be required to sell such brands or kinds of alcoholic beverages to every licensed wholesale distributor who desires to purchase the same, on the same price basis and without discrimination, and shall further be required to sell such beverages only to those distributors licensed as wholesale distributors. Winemakers either within or without this state shall be required to sell wine they produce to every licensed wholesale distributor who desires to purchase the wine, but winemakers shall not be required to sell the wine they produce only to licensed wholesale distributors.  Winemakers may sell wine produced at the winery to consumers on the premises of the winery.  **Oklahoma winemakers may sell and ship the wine they produce at wineries in this state directly to retail package stores and restaurants in this state.  As used in this section, "restaurant" means an establishment that is licensed to sell alcoholic beverages by the individual drink for on-premises consumption and where food is prepared and sold for immediate consumption on the premises.**  All laws passed by the Legislature under the authority of the Article shall be consistent with this provision.

Okla. Const. Art. 28, § 3 (emphasis added).  As previously noted (in ¶ 2, above), Title 37 has also been amended to implement the constitutional provision.  Thus, the exception to the three-tier system for Oklahoma winemakers is a relatively recent addition to the law of the State of Oklahoma.  (Complaint ¶ 20; Answer ¶ 20.)

10.    The amendatory constitutional provision noted above, along with the implementing legislation, constitute the Oklahoma laws that are challenged in this action.  The challenged laws permit Oklahoma winemakers, but not out-of-state

winemakers, to sell and ship the wine they produce at wineries in this state, directly to retail package stores and restaurants in this state.  *See* Okla. Const. Art. 28, § 3. (Complaint ¶ 27; Answer ¶ 27.)

11.    Some Oklahoma winemakers do currently sell and ship wine they produce in this state directly to retail package stores and restaurants in this state. (Complaint ¶ 28; Answer ¶ 28.)

### III.  Constitutionality of the Challenged Laws

As previously stated, plaintiffs move the court for a summary adjudication declaring that Oklahoma's 2000 constitutional amendment to Article 28, Section 3, and conforming state laws, violate the Commerce Clause under the holding of Granholm v. Heald, 544 U.S. 460 (2005).  Because of the importance of the Granholm v. Heald decision to the result reached in this action, the court begins its constitutional analysis with a description of that decision.

In Granholm v. Heald, the United States Supreme Court considered the constitutionality of Michigan and New York laws which exempted in-state wineries from the three-tier distribution systems in those states.  After preliminary discussion, the Court made the following observation:

> Time and again this Court has held that, in all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.  This rule is essential to the foundations of the Union.  The mere fact of nonresidence should not foreclose a producer in one State from access to markets in other States.  States may not enact laws that burden out-of-state producers or shippers simply to give a competitive advantage to in-state businesses.

*Id*. at 472 (citations and quotations omitted).

After stating these contextual principles, the Court described Michigan's regulatory scheme as one which allowed in-state wineries to ship directly to

consumers subject only to a licensing requirement, while out-of-state wineries, whether licensed or not, faced a complete ban on direct shipment. *Id*. at 473-74. The Court characterized "the discriminatory character of the Michigan system" as "obvious." *Id*. at 473. The Court described the New York regulatory scheme as one which differed from the Michigan scheme in that it did not ban direct shipments altogether; rather, the New York scheme required out-of-state wineries to establish a distribution system in New York in order to gain the privilege of direct shipment. *Id*. at 474. The Court noted that with the applicable licenses, in-state New York producers could ship directly to consumers from their wineries, while out-of-state wineries were required to open a branch office and warehouse in New York in order to do so. *Id*. at 474-75. The Court further noted that these were "additional steps" which "drive up the cost" of the out-of-state wineries' wine. *Id*.

Following these descriptions of the challenged state laws, the Court stated as follows. "State laws that discriminate against interstate commerce face a virtually *per se* rule of invalidity. The Michigan and New York laws by their own terms violate this proscription." *Id*. at 476. The Court noted that the states objected to this conclusion because they contended that their laws were saved by Section 2 of the Twenty-first Amendment to the United States Constitution. *Id*.[5] Granholm evaluated the states' Twenty-first Amendment argument at length, before rejecting it. *Id*. at 489.

The Court then considered whether either of the challenged state regimes advanced a legitimate local purpose that could not be adequately served by reasonable nondiscriminatory alternatives. *Id*. at 489. Characterizing this test as one which puts the burden on the state to show that the discrimination is "demonstrably justified"

---

[5]Section 2 of the Twenty-first Amendment provides: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors in violation of the laws thereof, is hereby prohibited."

because "concrete record evidence" shows that nondiscriminatory alternatives "will prove unworkable," the Court determined that neither Michigan nor New York had satisfied this "exacting standard." *Id.* at 492-93 (citations and quotations omitted).

Granholm concluded with the observation that although the states have broad power to regulate liquor under Section 2 of the Twenty-first Amendment, "[t]his power...does not allow States to ban, or severely limit, the direct shipment of out-of-state wine while simultaneously authorizing direct shipment by in-state producers." *Id.* at 493. The Court stated that "[w]ithout demonstrating the need for discrimination, New York and Michigan [had] enacted regulations that disadvantage[d] out-of-state wine producers." *Id.* On this basis, the Court held that under Commerce Clause jurisprudence, the challenged state laws could not stand. *Id.*

Given the similarity between the issues determined in Granholm and the issues raised in this action, it should be obvious that Granholm could hardly be closer to being an "all fours" case – favoring plaintiffs' contention that the challenged laws are unconstitutional. With that understanding in mind, this order next addresses each of the arguments put forward by the defendants in support of their view that the result in Granholm should not also be the result here.[6]

First, defendants argue that although the Oklahoma scheme "bears a resemblance to" the Michigan and New York statutes struck down in Granholm, "there are some distinctions which warrant this Court's consideration." (Defendants' response brief, p. 2.)

---

[6]Defendants offer the same arguments against summary judgment for the plaintiffs and in favor of summary judgment for the defendants. At the hearing on the motions, defendants conceded their position with respect to several of their arguments. This order addresses all of defendants' arguments, however, including arguments conceded in the hearing. The fact that certain arguments have been conceded is noted in the text of this order, when applicable.

The principal difference between the statutes challenged in <u>Granholm</u> and the Oklahoma laws challenged in this action is that the Michigan and New York laws allowed direct sales to consumers while the Oklahoma laws allow direct sales to package stores and restaurants. Having considered this distinction, the court finds and concludes that it is a distinction which is not legally significant here, given the overriding similarities between the challenged laws of all three states. For example, Oklahoma, like Michigan and New York, generally has a three-tier system for the distribution of alcoholic beverages. Like the challenged Oklahoma laws, Michigan's and New York's laws granted in-state wineries preferential treatment by creating exceptions to the three-tier distribution system. Specifically, all three states' laws did so by allowing certain direct shipments by in-state wineries which were not allowed for out-of-state wineries. Furthermore, the <u>Granholm</u> decision notes differences between the "details and mechanics" of the Michigan and New York statutory schemes, <i>id</i>. at 465-66, yet <u>Granholm</u> treats the Michigan and New York laws in the same manner for purposes of constitutional analysis. Finally, at the oral argument in this case, defendants' counsel was asked why the court should not consider the <u>Granholm</u> case as requiring this court to strike down the 2000 Oklahoma enactment. In response, defendants' counsel conceded--commendably, as the court believes counsel had no choice but to concede the point--that <u>Granholm</u> controls the instant case. (Transcript of September 18, 2006 hearing (TR.), p. 36.)

For these reasons, the court rejects defendants' argument that <u>Granholm</u> is distinguishable in any legally significant respect.

Second, defendants argue that plaintiffs have not met their burden of proof in this case because in order to find that Oklahoma's 2000 constitutional amendment constitutes a burden on interstate commerce, there must be record evidence demonstrating that the practical effect of Oklahoma's preference to in-state wineries

is that the preference actually benefits in-state wineries and burdens out-of-state wineries. (See generally, defendants' response brief, pp. 8-12.) Again with commendable candor, defendants' briefs admits that courts "have not typically conducted a fact-based inquiry to determine whether out-of-state interests are in fact burdened by state laws." (Defendants' response brief, p. 9.) Nevertheless, defendants argue that plaintiffs have not met their burden of proof because plaintiffs have not proposed any facts to suggest that the challenged laws have any particular effect on interstate commerce. (Defendants' response brief, p. 10.)

As already pointed out, Granholm states that the "[t]he discriminatory character of the Michigan system is *obvious*." Granholm, 544 U.S. at 473 (emphasis added). This statement in Granholm is followed by a description of how the Michigan law provides for what the Court calls "differential treatment" of in-state and out-of-state wineries. Granholm at 474. Granholm analyzes the terms of the New York statute in a similar manner. Granholm at 474. The next section of the Granholm opinion begins with the pronouncement that "[s]tate laws that discriminate against interstate commerce face a virtually *per se* rule of invalidity," and then follows with the conclusion that "[t]he Michigan and New York laws *by their own terms* violate this proscription." Granholm at 476 (citations omitted, emphasis added). Thus, although Granholm reviews some of the evidence regarding the economic detriment which the Michigan and New York laws caused to out-of-state wineries, the analysis contained in that decision indicates that the Supreme Court clearly considered the Michigan and New York laws to be facially discriminatory.

This understanding is confirmed by Granholm's quotation with approval of Brown-Forman Distillers Corp. v. New York State Liquor Authority, 476 U.S. 573 (1986). Granholm, 544 U.S. at 487. Granholm quotes Brown-Forman for the proposition that "[w]hen a state statute directly regulates or discriminates against

-12-

interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute *without further inquiry*." Granholm at 487, quoting Brown-Forman, 476 U.S. at 579, (emphasis added).  The Oklahoma laws challenged in this action fall within the category of state laws which are generally struck down "without further inquiry"-- *i.e.* without evidence of adverse economic benefits and detriments -- because the challenged laws directly discriminate against interstate commerce and their self-evident effect is a favoring of in-state interests over out-of state interests.  "No further inquiry" is needed in such cases because the discrimination and the discriminatory effect are obvious.  As defendants' counsel agreed at oral argument, it is "self-evident" that if the court rules for the plaintiffs in this action that ruling will hurt Oklahoma wineries.  (TR.  p. 31.)  This is because, as defendants' counsel agreed, when a state law gives an in-state winery the freedom to sell directly to Oklahoma package stores or restaurants but does not give an out-of-state winery the same prerogative, that fact "in and of itself" establishes that the small Oklahoma wineries do have an advantage over out-of-state wineries."  (TR. pp. 31-32.)  It is therefore appropriate for this court to "take it as self-evident that [this] state of affairs does give in-state wineries an economic advantage over out-of-state wineries."  (TR.  p. 32.)

The record establishes the undisputed fact that "[s]ome Oklahoma winemakers do currently sell and ship wine they produce in this state directly to retail package stores and restaurants in this state."  (Undisputed matters, ¶11.)  Given this fact, and considering the obvious nature of the burdens which the challenged laws place on out-of-state wineries and the benefits which they provide to in-state wineries, no additional evidence of actual economic detriments and benefits is necessary here. Such evidence would be merely redundant of what is already obvious.

Accordingly, the court rejects defendants' assertion that summary judgment in plaintiffs' favor is not appropriate because there is no evidence that the challenged laws actually hurt out-of-state interests or benefit in-state interests.

Third, defendants argue that the purpose of the challenged constitutional amendment was not to discriminate against out-of-state interests but to provide markets to Oklahoma winemakers, a purpose which saves the challenged laws. (Defendants' response brief, pp. 12-15.)  Defendants argue that the preference for Oklahoma winemakers was necessary at the time the Oklahoma constitution was amended because, at that time, Oklahoma wholesalers were declining to carry Oklahoma wines.  As stated in Associated Industries of Missouri v. Lohman, 511 U.S. 641, 653 (1994), however, "a court need not inquire into the purpose or motivation behind a law to determine that in actuality it impermissibly discriminates against interstate commerce."   Moreover, even if it were relevant, the purpose of the challenged Oklahoma laws as articulated by defendants is the very definition of a desire to provide a competitive advantage to in-state businesses over out-of-state businesses:  if Oklahoma wholesalers decline to carry wines produced out-of-state, out-of-state wineries have no remedy;  by contrast, Oklahoma winemakers faced with the same problem do have a remedy--thanks to the preference created by the 2000 amendment.  Accordingly, the court rejects defendants' contention that the arguable purpose behind the 2000 amendment saves it from unconstitutionality.

Fourth, defendants argue that "[a]lternatively, should this Court find that the statute is not discriminatory yet has an incidental burden on interstate commerce, this Court may apply what is known as the *Pike* balancing test."  (Defendants' response brief, p. 15.)  The Pike test, which is derived from Pike v. Bruce Church, Inc., 397 U.S. 137 (2000), applies "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only

incidental...." _Id_. at 142.  That is not the case here, where the challenged laws have direct and obvious effects on interstate commerce.  In any event, defendants' counsel conceded at the hearing on these motions that Granholm is controlling.  (TR. p. 36).  Accordingly, the court rejects defendants' reliance on Pike.

Fifth and finally, defendants make certain arguments under the heading in their brief, "The Overall Effect of the Oklahoma Provisions on Local and Interstate Activity."  (Defendants' response brief, p. 16.)  The arguments contained in this section of defendants' brief are much the same as their other arguments.  Defendants argue that the purpose for which the challenged laws were enacted was to provide an opportunity for Oklahoma winemakers in the limited area of restaurant and retail package sales, that there is a lack of record evidence showing that the challenged laws burden out-of-state wineries, and that "[t]he effect of the laws is not to favor in-state interest[s] over out-of-state interest[s] as such but [to] provide an opportunity for Oklahoma winemakers in a limited area."  (Defendants' response brief, pp. 16-17.)  The court has already rejected these arguments separately, and it now rejects the notion that these arguments combine to create an "overall effect" which would save the challenged laws.

Having rejected each of the defendants' arguments as to why plaintiffs are not entitled to summary judgment in this action while defendants are so entitled, it should be obvious that the court has determined that the challenged laws violate the Commerce Clause.  Given the gravity of such a declaration, however, and because, to this point, the court's conclusions have been stated in the sequence dictated by defendants' arguments, the court formally restates and summarizes its determinations here.  With respect to the constitutionality of the challenged Oklahoma laws, the court determines as follows.

Granholm v. Heald, 544 U.S. 460 (2005) is controlling authority.

Oklahoma generally has a three-tier distribution system, as do Michigan and New York, the states whose laws were held unconstitutional in <u>Granholm</u>.

<u>Granholm</u> holds that in circumstances similar to those in Oklahoma, state laws that preferentially exempt in-state wineries but not out-of-state wineries from a state's three-tier distribution, discriminate against interstate commerce in violation of the Commerce Clause.[7]

Like the states' laws challenged in <u>Granholm</u>, the challenged Oklahoma laws do not treat in-state wineries and out-of-state wineries in an evenhanded manner. The challenged laws provide for differential treatment of in-state and out-of-state wineries. They do so by creating an exception to Oklahoma's three-tier distribution system in favor of in-state wineries but not out-of-state wineries. This exception constitutes a preference for in-state wineries over out-of-state wineries of the type which existed in Michigan and New York and of the type held unconstitutional in <u>Granholm</u>.

This exception, or preference, is self-evident from the face of the challenged Oklahoma laws. It is also obvious from the terms of the challenged Oklahoma laws that the preference they create for in-state wineries economically benefits in-state wineries and economically hurts, or causes a detriment to, out-of-state wineries.

Specifically, the economic detriments to out-of-state wineries that are created by the challenged laws include the fact that the challenged Oklahoma laws allow

---

[7]It is of note, albeit of no moment, that Oklahoma alcoholic beverage law and the Commerce Clause first intersected nearly a hundred years ago. In <u>Hudson v. State</u>, 101 P. 275 (Okla. Crim. 1909) the defendant was arrested for bootlegging on December 23, 1907, thirty-seven days after the Oklahoma Constitution, including the Prohibition Ordinance, took effect (*see,* <u>Proclamation of Statehood</u>, November 16, 1907; <u>Schedule</u>, § 4). Fortunately for the defendant, although he was arrested in this state, the arrest was made while the goods were still in transit from their out-of-state point of origin. *Id.* at 275. This led to the Court's conclusion that "the purchase of said whisky was an interstate contract, and was entitled to the sheltering influence and protection of the interstate commerce clause of the Constitution of the United States until said whisky was in fact delivered at the home of [the] accused . . . ." *Id.* at 279.

direct sales by Oklahoma winemakers to Oklahoma package stores and restaurants, permitting in-state wineries to skip the wholesale (or second or middle) tier of Oklahoma's three-tier distribution system without affording this same advantage to out-of-state wineries. This scheme allows in-state wineries, but not out-of-state wineries, to avoid a layer of distribution costs, which allows in-state wineries to sell their wines in Oklahoma more competitively than would otherwise be the case. This gives in-state wineries a competitive advantage over out-of-state wineries. The converse is, of course, equally true. The challenged Oklahoma laws disadvantage out-of-state wineries as compared to in-state wineries. Additionally, the challenged laws allow Oklahoma winemakers, but not out-of-state wineries, to secure buyers for their product in Oklahoma when Oklahoma wholesalers decline to distribute their product. This is another competitive advantage which the challenged laws give to in-state wineries but deny to out-of-state wineries, disadvantaging out-of-state wineries.

State laws which discriminate against interstate commerce in the way that the challenged Oklahoma laws do, face a virtually *per se* rule of invalidity under the Commerce Clause. Granholm at 476. An exception to the *per se* prohibition against such discrimination applies when a state's regime advances a legitimate local purpose which could not be adequately served by reasonable nondiscriminatory alternatives. Granholm at 489. No such purpose, consonant with extant Commerce Clause and Twenty-first Amendment jurisprudence, has been offered here.

Other courts have applied Granholm to strike down discriminatory direct-shipping laws in other states. Cutner v. Newman, 398 F. Supp. 2d 389 (E.D. Pa. 2005); Bainbridge v. Turner, Order filed August 5, 2005, Case No. 8:99-CV-2681-T-27TBM (M.D. Fla.) (attached to plaintiff's moving brief as Exhibit "1"); Stonington Vineyards, Inc. v. Jenkins, Order filed October 5, 2005, Case No. 05-10982-JLH (D. Mass.) (attached to plaintiff's moving brief as Exhibit "2"); Stahl v. Taft, Agreed

Order and Injunction filed July 19, 2005, Case No. 2:03cv00597 (S.D. Ohio) (attached to plaintiff's moving brief as Exhibit "3"); <u>Costco Wholesale Corp. v. Hoen</u>, 407 F.Supp.2d 1247, 1252 (W.D. Wash. 2005) (addressing the applicability of <u>Granholm</u> to direct shipments to retailers rather than to consumers and rejecting the argument that this distinction is a constitutionally significant difference).

In short, the court concludes and hereby declares that the challenged provisions of the Oklahoma Constitution and associated Oklahoma statutes are unconstitutional under the Commerce Clause of the United States Constitution.

## IV.   <u>Remedy</u>

<u>Granholm</u> mandates that the states treat in-state and out-of-state wineries in an evenhanded manner.  This court's conclusion that the challenged Oklahoma laws do not do so, means that the court is required to consider the most appropriate remedy for that unconstitutionality.

Plaintiffs argue that the constitutional infirmities may be remedied in two ways: the court may either strike the language in the Oklahoma Constitution which creates the preference for in-state wineries, so that in-state wineries are no longer allowed to direct-ship to restaurants or package stores; or the court may extend the in-state preference to out-of-state wineries so that all wineries are permitted to distribute directly to package stores and restaurants in Oklahoma.  (Plaintiffs' moving brief, p. 12.)  As between these two choices, plaintiffs argue that the court should choose the least disruptive option which they argue is to strike down the preference for in-state wineries so that no wineries, in-state or out-of-state, are excluded from Oklahoma's three-tier system of distribution.  Defendants do not disagree with the proposition that it would be less disruptive for the court to strike down the preference than to extend it to out-of-state wineries.  That, however, is not the option which defendants urge the court to adopt if it concludes that the challenged laws are unconstitutional.  In that

event, defendants support a third option.  They ask the court to "defer to the Oklahoma Legislature to make the important policy decision as to how to best remedy the Constitution and the Statutes."  (Defendants' response brief, p. 18.)

As the undisputed matters stated earlier in this order make clear, Oklahoma has a long history of maintaining strict statutory and regulatory control over the distribution of alcoholic beverages in this state.  This factor weighs heavily in favor of a legislatively-crafted remedy.  Moreover, the state legislative process – even with the impediments of the referendum procedure – offers more flexibility for solving the constitutional deficiency than is available judicially.  For example, the legislative process could address the unconstitutionality while simultaneously enacting other measures (not preferences) that would protect Oklahoma's fledgling wine-making industry.  This flexibility, and the fact that these issues present policy questions rather than legal questions, cause the court to strongly favor a legislatively crafted remedy over a judicially crafted one.  With respect to remedy, the short of the matter is that regulation of the distribution of wine and spirits is a quintessentially legislative function.  State regulation of the alcoholic beverage industry involves legislative judgments with respect to temperance, public safety, taxation, licensing and consumer protection (to name only the obvious few) which courts are ill-equipped to make.  Moreover, legislative consideration of a remedy in this case need not be confined to the binary choice that this court is called upon to make if it selects a remedy.[8]

---

[8]The power of the state to adopt legislation in the realm of economic regulation is near-plenary – as long as the state legislation does not impermissibly discriminate against interstate commerce.  *E.g.*, Powers v. Harris, 379 F.3d 1208, 1216-22 (10th Cir. 2004).  Nothing in Granholm removes small wineries from favorable – even discriminatory – legislative consideration, as long as in-state and out-of-state small wineries receive essentially identical legislative treatment.  Legislative discrimination on the basis of the *size* of commercial enterprises (*i.e.*, more favorable treatment for  small wineries, in-state or out-of-state) does not implicate interests that have enjoyed exacting judicial review.  *E.g.*, Central State University v. American Ass'n of University Professors,

(continued...)

For these reasons, the court finds and concludes that a determination regarding the most appropriate remedy for the unconstitutionality identified in this order is a determination best left to the Oklahoma Legislature and to the people of Oklahoma.[9] *See*, Costco Wholesale Corporation v. Hoen, 407 F. Supp. 2d 1247, 1256 (Wash. 2005) (staying the enforcement of that court's order for a period sufficient to permit the Washington legislature to act as the constitutional defects in the Washington system presented a policy choice between alternatives best left to the discretion of the state legislature.)[10] Therefore, the court will stay the entry of judgment in this action until June 15, 2007, to allow the Oklahoma Legislature an opportunity to act on this matter and to allow time for the Legislature to refer a proposed constitutional amendment to the people of this state for their approval or rejection.[11]

---

[8](...continued)
526 U.S. 124, 127-28 (1999); Exxon Corp. v. Eagerton, 462 U.S. 176, 195 (1983); *see generally*, Rotunda and Nowak, Treatise on Constitutional Law, vols. 2 and 3, §§ 15.4, 18.3 (West 1999). The court's decision today should not, therefore, be understood to cast doubt upon the authority of the State of Oklahoma to enact provisions which nurture Oklahoma's nascent small winery enterprises, as long as the classification applies substantially equally to small wineries both within and outside of Oklahoma.

[9]The Oklahoma Constitution sets out the manner in which an amendment to the constitution may be proposed by the legislature and voted on by the people, to remedy the unconstitutional portion of Article 28, Section 3. *See,* Article 24, Section 1, of the Oklahoma Constitution.

[10]Costco is relied on heavily by both sets of parties in their respective memoranda regarding deferred remedies, as a case which sets out an acceptable manner in which a court may defer to the state legislature's choice of remedy.

[11]The court recognizes that, unlike the situation presented in Costco, a remedy in this case must include an amendment to a state constitution. This means that an extension of the June 15, 2007 deadline may ultimately be warranted, in order to allow time for a vote by the people of Oklahoma on a referred measure to amend the state's constitution. Recognition of this reality should not be taken as suggesting any reluctance on the part of the court to act promptly following the June 15, 2007 deadline, should the Oklahoma Legislature fail to act in a timely manner.

Because judgment is stayed pending legislation, plaintiffs' original request for an injunction restraining defendants from enforcing or relying upon the preference for in-state wineries is denied, for now.  This is consistent with plaintiffs' position, with which the court concurs, that if the court stays its judgment to allow the Oklahoma Legislature an opportunity to act, then the industry should maintain the status quo until the stay is lifted.  (Doc. no. 42, p. 11.)

Finally, to make sure there is no uncertainty regarding the nature of any future judicial remedy which the court will put in place should the Oklahoma Legislature fail to act, the court states here its conclusion that it would be much less disruptive to Oklahoma's long-standing regulatory scheme  to remove the exception to the three-tier system which is now unconstitutionally extended to in-state wineries, than it would be to extend the exception to all wineries.  *See, id.* (finding that it would cause less disruption to the Washington scheme to withdraw the limited exception to Washington's long-standing three-tier system than would be caused by significantly expanding the exception, although the court stayed its judgment to allow legislation). This conclusion regarding the best judicially crafted remedy, however, is of no force or effect at this time.

## V.  Conclusion and Rulings

In performing its assigned task in this case, this court does not sit in judgment of the wisdom of the challenged Oklahoma constitutional and statutory provisions, nor, to be sure, does the court sit to review the correctness of the Supreme Court's five-to-four decision in Granholm – a decision which, it may be noted, included lengthy dissents which provide illuminating accounts of the historical and political context in which the Twenty-first Amendment – including § 2 thereof – was adopted. Granholm controls, and that is the end of the matter.

After careful consideration of the parties' submissions, the record, and the relevant authorities, the court determines that the plaintiffs are entitled to summary judgment declaring that the challenged Oklahoma laws are unconstitutional under the Commerce Clause of the United States Constitution.  To the extent that plaintiffs' motion seeks a determination to that effect, the motion is **GRANTED** on the basis of the conclusions set forth above.

To the extent that defendants' motion seeks a contrary declaration and seeks summary judgment in defendants' favor, defendants' motion is **DENIED**.

Judgment in plaintiffs' favor in accordance with these rulings is stayed, however, because the court agrees with the parties on both sides of this case that a legislative remedy is devoutly to be desired, if that can be accomplished within a reasonable time.

Final judgment will be entered on or after June 15, 2007.  The parties are **DIRECTED** to file, by June 1, 2007, a notice advising the court of the status of legislative efforts to address the constitutional defect identified in this order, after which the court will determine whether the stay will be lifted or extended.

Defendants are **DIRECTED** to provide a copy of this order to the President Pro Tempore of the Oklahoma State Senate and to the Speaker of the Oklahoma House of Representatives.

Dated this 15th day of November, 2006.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

06-0239p009(pub).wpd